

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable T. M. Trimble, First Assistant
State Superintendent of Public Instruction
Austin, T e x a s

Dear Sir:

> Opinion Number O-4953
> Re: (1) Length of contract between
> common school district and bus
> driver.
> (2) Whether sale of school bus
> by common school district must
> be approved by county board.
> (3) Whether payments for pur-
> chase of bus may extend past
> present school year.

We have received your letter of October 30, 1942, in which you enclose a letter from Mr. H. C. Hinton, County Superintendent of El Paso County. We quote the following from Mr. Hinton's letter:

> "The Board of Trustees in the Smelter Common School District desires to make a contract for transportation of school pupils for a period of longer than the remainder of this year. Please give us or secure from the Attorney General, the following information:
>
> "1. For how long may we make a contract for transportation of pupils? That is, may we make it for the rest of this school year and for next year?
>
> "2. The School Board owns the present school bus and desires to sell it to the contractor.

Is it necessary to secure the approval of the
County Board in accordance with Article 2753?

"3. Can we sell the bus to him on credit
even though the final payments will not be
made during the present school year?"

The only statutes, which we have been able to find,
authorizing the board of trustees of a school district to
employ or contract with a person or firm for the transpor-
tation of its pupils, are Articles 2687a and 2813, Vernon's
Annotated Civil Statutes. Article 2687a provides as follows:

"Transportation of pupils. -- The trustees of
any school district, common or independent, mak-
ing provision for the transportation of pupils
to and from school, shall for such purpose em-
ploy or contract with a responsible person or
firm. No person shall be employed to transport
pupils, who is not at least twenty-one years of
age and a competent driver of motor vehicles and
sound in body and mind. All motor vehicles oper-
ated by school districts, directly or by contract,
in the transportation of pupils shall be covered
and so glassed or curtained at the sides and rear
as to protect the pupils from the inclemencies of
the weather, and shall at all times be equipped
with efficient lights and brakes. The drivers of
all school transportation vehicles shall be re-
quired to give bond for such amount as the Board
of Trustees of the district may prescribe, not
less than $2,000.00, payable to the district, and
conditioned upon the faithful and careful discharge
of their duties for the protection of the pupils
under their charge and faithful performance of the
contract with School Board; and they shall, before
crossing any railroad or interurban railway tracks,
bring their vehicles to a dead stop. Failure to
stop before crossing such railway as provided here-
in shall forfeit the drivers contract and, in case

of accident to pupils or vehicles the bond shall
be forfeited and the amount and all right there-
under shall be determined by a court of competent
jurisdiction. Acts 1929, 41st Leg., 1st C.S.,
p. 96, ch. 42, sec. 1."

Article 2813, relating to consolidated school districts,
reads as follows:

"Consolidation: free transportation. — When in
their judgment it is deemed necessary or expedient,
said trustees may provide for the transportation of
pupils to and from any elementary school or high
school of the district whereupon such pupils may be
in attendance, and trustees are hereby empowered to
employ transportation vehicles and drivers for such
service, paying the cost thereof out of the local
maintenance fund of the district or out of such other
funds as may be appropriated for this purpose. Id."

You will notice that both of these statutes are silent
as to the term of the employment or contract. For that reason
it is our opinion that the contract may not cover a longer
period of time than a year.

A clear analogy may be drawn between the question under
consideration and the employment of teachers. Article 2750a
authorizes the trustees of a common school district to employ
teachers for a period of time not in excess of two years. Ar-
ticle 2781 authorizes the employment of teachers by the board
of trustees of an independent school district for a term not
to exceed three years, and by some districts, for a term not
to exceed five years. If the school districts already had
such authority, then there would be no point in passing such
statutes. It has been held that these statutes are a grant
of power, not a limitation. Fikes v. Sharp (W.E. Ref.), 112
S. W. (2d) 774.

We quote the following from the opinion of the court in Fikes v. Sharp, supra:

"The facts that these common school districts are supported largely by annual apportionments from the public free school funds; that they also derive their revenue from local taxation, the rate of which may be charged from year to year by the electorate; that they are subject to re-classification from year to year by the county authorities; and that their scholastic population may vary from year to year in a manner seriously to affect their revenues; are considerations which we belive strongly point to a legislative intent that contracts binding upon their future revenues should be limited to a one-year period."

If without these provisions the board of trustees of a school district could employ teachers for a term no longer than a year, then it is our opinion that as there is no provision granting the school trustees authority to employ or contract with a bus driver for a period longer than a year, the same may not be done.

Our conclusion is consistent with the well-established principle that school trustees cannot create a deficiency debt against the district. Article 2749; Collier v. Peacock, 93 Tex. 255; Templeman Common School District No. 1 of Brazos County v. Boyd B. Head Co., 101 S. W. (2d) 352.

Your first question is specifically answered as follows: The board of trustees of a common school district may not make a contract for the transportation of its pupils for a longer term than a year. A contract may be made for the remainder of the current school year, but it cannot cover both the remainder of this school year and the following school year. Our conclusion is strengthened by the fact that the

State Department of Education has long construed the statutes
as authorizing a board of trustees to make a transportation
contract for no longer period of time than one year.

We wish to direct your attention to the current rural
aid bill (Acts 1941, 47th Leg., R.S., H. B. 284, ch. 549, p.
880) wherein it is provided that the county boards of trustees
may employ bus drivers. Section 4 of Article V (Transportation
Aid) reads as follows:

"County Boards of Trustees are hereby author-
ized to employ bus drivers for one year and the
salary of no bus driver may be paid out of the
County Board Transportation Fund created herein
unless such bus driver is so employed. Provided
further, that only pupils or persons directly
connected with the school system shall be trans-
ported on school buses while in the process of
transporting pupils to and from the school and
any bus driver violating the foregoing provisions
shall forfeit his contract and shall be immediate-
ly discharged by the County Board of Trustees.
However, subject to the provisions herein, bus
drivers who own their own buses and are so em-
ployed may be given a contract for not to exceed
two (2) years conditioned that said bus drivers
agree to make improvements on their buses, so as
to more adequately insure safer transportation
for the scholastics, and the route of such bus
is not changed for the second year of the con-
tract."

You will notice that the county board may employ bus
drivers for one year, or if the bus drivers own their own
buses, for two years if said drivers "agree to make improve-
ments on their buses, so as to more adequately insure safer
transportation for the scholastics, and the route of such bus
is not changed for the second year of the contract." However,

the point about which you inquire is the authority of the board of trustees of the school district to make such a contract, not the county board. We wish to point out, however, that under Section 4 above quoted the salary of a bus driver may not be paid with rural aid funds unless the driver is employed by the county board, assuming, of course, the school district is eligible and entitled to participate in the rural aid benefits.

We now will consider the second question. It is stated that the school district owns the present school bus and desires to sell the same. You wish to know whether the approval of the county board must be secured under the provisions of Article 2753, which reads as follows:

"Sale of school property.— The trustees of any school district, upon the order of the county trustees prescribing the terms thereof, when deemed advisable, may make sale of any property belonging to said school district, and apply the proceeds to the purchase of nexessary grounds, or to the building or repairing of schoolhouses, or place the proceeds to the credit of the available school fund of the district."

Although this article does not apply to independent school districts, it does apply to common school districts. R. B. Spencer & Co., v. Brown, 198 S. W. 1129. Though the word "property" in its broad sense would include both real and personal property, it is our opinion that "property" as used in Article 2753 is limited in its application to real property. This conclusion is reached because of several reasons. First, this article is placed among those statutes dealing with the land and schoolhouses of districts. (See Article 2752, relating to the construction of buildings; Article 2754, declaring that the schoolhouses and grounds shall be under the control of the district trustees; Article 2756, relating to the use of

schoolhouses by white and colored students). Second, none
of the cases in which this article has been construed in-
volved the sale of personal property, but on the contrary,
dealt only with conveyances of real estate. Third, the uses
for which the money derived from a sale under Article 2755
may be applied are clearly indicative that a sale of realty
was contemplated. Fourth, there is much more reason to re-
quire the approval of the county board on a sale of realty
than there is in the case of personal property, for the value
of the personal property of a district is usually negligible
as compared to its real property value. Until the Legislature
authorized the purchase of buses, the only personal property
that a district could acquire consisted only of supplies and
equipment, and we think that at the time Article 2753 was
originally enacted (1905), the Legislature had in mind only
real property.

The question now arises as to the authority under
which the board of trustees may sell the personal property of
the district. The trustees of a common school district are a
body corporate and are given the right to manage and control
the school district and its property. See Articles 2748 and
2749, Revised Civil Statutes. They are authorized to purchase
supplies and equipment. See Article 2827, Revised Civil Stat-
utes. It is true that a board of trustees possesses only the
powers expressly conferred upon it by law or necessarily im-
plied from such powers. Harlingen Independent School District
v. Page Bros., 48 S. W. (2d) 983; 24 R.C.L., 564. However, we
believe that as the board of trustees of a common school dis-
trict is a body corporate authorized to acquire equipment and
supplies, it has the authority to dispose of such property by
sale when the board in its discretion determines that the int-
erest of the school district would be best served by the same,
and if this power is not an expressed power, it is certainly
an implied one. Compare Vestal et al., v. Pickering et al.,
(Sup. Ct. Oregon), 26 Pac. 821. In the instance of the sale
of realty, an additional requirement is added; namely, the act
of the county board in joining with the local board. But this
requirement is not present in the sale of personalty. Your
second question is, therefore, answered in the negative.

If the board of trustees has authority to sell the personal property of the district, then as the terms of such sale are not set out by statute, it is our opinion that the board may determine such terms, provided, of course, that they are reasonable.

Your third question is, therefore, answered as follows: If the board of trustees in its discretion determines to sell the bus on credit and such action is reasonable in view of all the facts surrounding the transaction, then it may do so even though the final payments are not to be made during the present school year. It is our further opinion that the money received from the sale of the bus would be local funds under Section 2 of Article 2827 and could be used only for those purposes which are set out in such provision.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By George W. Sparks
George W. Sparks
Assistant

GWS/s

O.K.
EFP

APPROVED NOV 20 1942

ATTORNEY GENERAL OF TEXAS